You each please identify yourselves. Daniel Regenscheidt for Appellant Juan Shepherd. Good afternoon, Assistant State's Attorney Brian Levitsky on behalf of the people of the state of Illinois. Each side has 20 minutes. The appellant may want to reserve. You can reserve whatever time you wish. We act as if we were in a courtroom and that we will interrupt you. Finish your statement and then if you would please tackle a question. And as for a time if we have questions and it goes on past the time, that's fine. I mean, you're here to answer our questions. So don't let the clock worry you. So how much time do you want to reserve? Can I reserve five minutes, please? Sure. Okay. And if no questions, you can proceed, please. Thank you. Your Honor's counsel, may it please the court. I'm Daniel Regenscheidt here on behalf of Appellant DeJuan Shepherd. And this is the case about the significant amount of phone calls. That's how the state described the case to the trial court. And that's how the trial court understood the case. The state here had admitted two disks full of jail calls in which Mr. Shepherd called everyone in his mother in his case where he was arrested for domestic battery. The admission of these calls was prejudicial because the calls were irrelevant. It prejudiced Mr. Shepherd's right to a trial. And also, I don't know that the judge listened to any calls other than the six. I think that's the critical question in the data between the briefs. And I think there are several points that show that the court considered the unpublished phone calls. Although it's never stated, it's never stated specifically, right? You can see that. The court never says, I listened to all the calls on the disks. I listened to all the calls. Didn't say. There's nothing on the record that says the judge listened to any other calls. There's nothing in the record explicitly, as you say, that even says he listened to the disk outside of court, even the published phone calls. But to begin with, the admission of irrelevant evidence over an objection lends itself to the presumption that the court considered those phone calls. I think here, the state wants to admit all of the phone calls, but then work off the presumption that the court did not listen to the admitted evidence. And I think the opposite here is the way that it needs to be interpreted because on record page 44, the defense counsel did object when just a page before at 43, the state introduces the disks through the court and says, last week, I ordered all these phone calls. I'm tendering them to counsel. And I think there's some transcripts between council parties. And he says, I have 40 phone calls and hundreds of other phone calls. And they are about Mr. Shepherd making threats and calling family. And that's when the defense counsel then objects. And then the court ultimately says if they're what they says they are, then they're admissible. And those calls were... But he also said that they had to lay a foundation, right? They did. Ultimately though, the calls were admitted by stipulation and both disks were included. I think that was page 78. The parties simply end up just stipulating to the foundation and then all the exhibits go back or all the calls go back to the exhibits. So ultimately, I mean, I think admitting them over the objection and then the court does say you need to lay a foundation, but Ms. Moore lays a lot of the foundation for the published calls. And then we see the court reference it or the state referencing the calls that are unpublished. And I think this was one of the other contentious points whether this reference to the mother and the calls actually made a difference or there is evidence that the court listened to anything. And I think ultimately one, as the critical reflection of what the case is about. This is a point on page 117. The state says, oh, you remember this case, Judge. This is the case where Andrew Moore testified about, you know, so many this large significant amount of phone calls where he calls the defendant or he calls the victim, his mother and his girlfriend and there's no published calls with the mother. I think the state here is for whatever reason relying on this assumption that the court could have listened to the phone. That statement doesn't say that the judge listened to anything. I mean, it's not a statement by the judge. How do you get around the fact that being a bench trial, the law requires us to presume that the judge considered competent evidence? I mean, I think it's the objection on page 44 where counsel does object to the admission of the phone calls and then... But that was in the motion eliminate, right? Yes, that was... Okay, but that was way before and then they had a foundation and then there's stipulations and then there's nothing to say the judge considered anything other than competent evidence. So you're trying, I mean, what you're trying to do is isn't it to create a dispute when there's nothing there? I mean, there's nothing to say what you say. Well, if we're going to ruin your favor, what backs it up? Other than that, the fact that there was an objection is not enough as you know. If it's an objection to evidence that shouldn't have been admitted, then we can assume or we can legally resolve that the court considered that evidence. We presume the judge only looked at considered competent evidence. There's nothing to say he didn't do it. He did anything other than what was done in the courtroom with everyone present. And you even acknowledge that, right? I mean, there's nothing direct. We have to imagine it. We have to speculate, don't we? I think that speculation come... I don't think it is speculation and it's not on the paper that the court, you know, took its two days in between the hearing to sit and listen to all these calls. At the same time, if the judge were to have even attempted to look at this disc of hundreds of phone calls, navigating this disc is almost impossible. We're talking about hundreds of phone calls, not labeled, random characters. I hope the appendix attached to the end of my brief was at all helpful because any one, any random sampling of these calls is going to include prejudicial information. There are so many calls and so many prejudicial calls that any attempt to have reviewed the evidence is going to bring out negative character and information that was not published. But if it was that difficult, it would have been difficult for the judge to do any, to listen. I mean, the judge never said anything. I mean, I would understand your argument a lot better if the judge would have said something along those lines. But there's nothing there. And again, we can't base a reversal on stipulation. I mean on speculation, excuse me. I think I think both, in its verdict, the court does say, you know, I heard the calls. He doesn't say I heard all the unpublished calls. But when we're talking about the calls and the court's conclusion about his character, essentially, which is what becomes the largest weight in the in the verdict is Mr. Sherrod's character when he was testifying and the court's judgment thereof. The only character call we have is the sixth call because all of the others were conscious, were supposedly introduced for consciousness of guilt. The contents of those calls were, you know, arguably showed that I think coherent reading of the calls actually shows that Mr. Mr. Shepard was attempting to get an attorney and attempting to develop his own alternate theory of the case in which Ms. Moore, you know, put the case on him for whatever reason because she wanted to be with him and he denied that. And, you know, the calls came in for consciousness of guilt on that end and could be read either way. But they could not be used for character evidence. And I think the state relied on it as character evidence, essentially, and relied on hopefully the courts listening to all these other phone calls because the only, the sixth call, which is only introduced in the cross-examination because Mr. Shepard put the stand, that's where the state on cross ultimately says, oh, you said you loved her but you were lying to her and that is, that is the characterization of Mr. Shepard as a liar. And that's the only piece is that it's not a factual lie. It's that, you know, he's misrepresenting his feelings for a person, for his own gain. But then the courts utterly disregard of his testimony. He says it's a complete, you know, fantastic story, an incredible story, that he had no credibility whatsoever when Mr. Shepard told his story, which for what it's worth is a common rendering of a he said, she said, domestic battery kind of situation where you know, the defendant here is saying the victim actually came to him and interacted with him because she still wanted him. That's, that's, there's, there's nothing particularly fantastic about that story. Mrs. Isn't that an argument that we are supposed to ignore the judge's credibility determination? I'm sorry. Can you, can you repeat that? Isn't that, isn't that the judge's job to determine the including the defendant? Yes, but here the, it's the weight of these unpublished calls or the judge's character determination from the single phone call. So you're assuming that all the judge's character determinations are because of the calls. I think the judge's character determination being so, it's so extreme that it points to something outside of, of this one phone call that was introduced on cross-examination to impeach him. Oh, his character. There's just, there's just, there's just so much. You're saying a judge could never make that comment about a testifying defendant? I think based on this record, what we've seen, we have one instance in which Mr. Shepard admits that he does not, in fact, have feelings for Ms. Moore, that he was trying to get her on the basis, his thought that he could use letters from him to show that she still cared for him. My point is, you seem to be, you seem to be intimating that a judge could never say that a testifying witness is beyond belief. I don't intend to do that at all. But I think judges can and could do that all the time. Right. So why couldn't a judge do it in this instance? Because Mr. Shepard presented a coherent and credible story with only one fairly insignificant impeachment act on his cross-examination. It's, it's, it's not even that he didn't believe him. The judge's job is to weigh these competing stories and make a determination. And I think there wasn't a challenge to the sufficiency of the evidence. Ms. Moore's story meets the elements of domestic battery. But what the state did here is rely on character evidence to unfairly disparage Mr. Shepard throughout, throughout the record and throughout the unpublished record. I, I think, I just, I think, I think we go back, the state here is relying on the assumption that the court didn't review admissible evidence. I think it is equally common that courts all the time admit certain evidence and then don't require it to be published. And I think here, the state shows it was publishing six of its calls and in no, no instance does it say we're only presenting these six calls. We're only admitting these six calls. This is all we want you to consider and the judge never says, I'm only going to consider these calls. The unpublished calls are part of the record because they were admitted. And I think it's equally, is equally fair to take a legal assumption that a court will review evidence that it's admitted, particularly here over objection, but evidence is admitted and treated as relevant throughout the trial. There's no, there's no indication that the court's saying I have a whole bunch of irrelevant calls or I'm going to parch the calls. It admitted, it admitted the two disks. The state says, you know, we got them just a week before, you know, it's common practice to give 200 phone calls on an evidence disk. I'm not sure that common practice like that is the kind of practice that supports the due process right to a fair trial for one and the ability of a defendant to present their defense in a case like this where we don't know. The state did not make the record either that the court only listened to the six published calls of its admitted calls. State admitted the disk. But it's your burden. It's not their burden to show that the judge did it and and the law assumes otherwise, so. Well, the court does not seem to seem to agree with the position. No, I'm just questioning. Don't assume anything with regard to appellate court justices. But we're trying to ask questions to the juries. I'm leaning on the position that the admission of the disks, the full, you know, we're talking 20 hours of calls here that get admitted given to defense counsel, essentially the morning of trial or possibly the day before. It's the record length here on that point. But they admitted all the calls and the state's responsible for everything that they had admitted. So also in that the defendant didn't have enough time to review the evidence. Is that the argument? The record the record shows the defendant did not have enough time to review the evidence and he was demanding trial, wasn't he? Correct. But what I think is important is that one, if the court listened to the calls and if if a basis can be shown that the court may have listened to the unpublished calls, there's no telling by Mr. Shepard what calls were listened to or how the court was interpreting those calls. And that's where the inability to prepare a defense and the inability to determine whether to testify comes in because while Mr. Shepard was demanding trial at the same time, the once the calls are admitted and his own counsel hasn't been able to review the entirety of the calls, what we're talking about because of the mess of these disks is that the court may have reviewed the first 50 calls on the disk and counsel is either unaware of those contents or unaware. That's what the court is listening to and then can't advise Mr. Shepard what to testify about. There any evidence that the defense lawyer didn't know what was on the tapes around the disks? There's the it appears it does not appear is off record. What the record does show is the state giving some sort of transcripts undescribed counsel at the point of the objection on page 44. I believe there's a break and then there's some discussion of transcripts and then counsel gives a specific objection to call number one, which to me suggests purely suggests this is speculation on my part off the record that there were transcripts of the published phone calls that I don't have any transcripts and I don't know exactly what defense counsel reviewed, but I will say that if there's 20 hours of audio and so the physical ability to review from receiving the calls to the end of the trial is profoundly difficult. You have to do almost exclusively that in your waking hours and do nothing else. It sounds like that's a post conviction issue that could be better explored in post conviction proceedings. Not to be raised here because you have no basis for saying what you're saying. Although you have an obligation to fight like hell for your client and try every maneuver you can make to try to get him a new trial, but it sounds like if defense counsel wasn't adequately informed or prepared then that's a post conviction issue. Correct? There's excuse me. The there's there's no we didn't make the particular claim that defense counsel was not prepared for trial. And I think the the more what what we did raise the way that the way we did raise this claim was as the interference with the right of Mr. Shepard to understand what is on the on the disks and be informed about how to testify because we don't know what the court listened to off the record on the unpublished calls. And there is no evidence of what the court as Judge Hyman had said or Justice Hyman had said nothing in the record of the court saying I listened to these calls. I did not listen to these calls or I'm only going to review the published calls. All we have are two disks of fully admitted evidence over objection that any random call will show prejudicial information if you listen to a long enough and and the state admitted these calls the state built this case on the admission of these calls. Now, this was a simple domestic battery case Andrew Moore testified. She gave a coherent story. She met the elements in her testimony of the and Mr. Shepard admitted. He met the he knew about the order of protection. The case then stacked up on prejudicial unpublished phone calls rammed into evidence and basis of the horrible characterization of Mr. Shepard and and his and his testimony ultimately. Are there any further questions? If not, we reserve five minutes and Mr. Levitsky. Thank you. Again, Assistant State's Attorney Brian Levitsky on behalf of the people and may it please the court defendant seems to be relying very heavily on this McCulloch case to get around the presumption that the judge only considered competent evidence and I think what's worth noting is that in McCulloch, there was evidence. It was actually brought to the courts conscious attention. It was a dying declaration admitted through witness. There was an objection which was eventually reversed on appeal where the court said that it was not properly admitted. But the court in McCulloch said that in that case, it was clear that the presumption was rebutted. Here. We don't have an indication that the content of the unpublished calls was similarly consciously brought to the awareness of the trial court before it made the decision to admit. And so the analogy that I think defendant is trying to draw from McCulloch is simply an app here. Instead. We have the ordinary black letter presumption that the trial court is presumed to only consider competently admitted evidence for the purpose that it's admitted absent and affirmative showing from the record. And as I think we've been discussing here for a minute. We simply don't have that in this case. We have few references from the people to calls are made from the defendant to his mother. I think defendant makes the argument, of course, that this could refer to unpublished calls, but the defendant also testified to making those calls on cross-examination. So I think the people's references there could have been to defendant's testimony as opposed to unpublished calls as well. I would note that the reason that we argue the relevance of those calls was to show that defendant was going through third-party intermediaries when speaking to Ms. Moore, whereas he would not do so when speaking to family members, which was one of the ways we argued that he was attempting to contact her so that he could engage in this manipulation. And as to whether or not there was any consideration by the court of these unpublished calls, this would simply be a matter that's the horror of the record and Justice Pierce, as you alluded to, better pursued through a post-conviction petition. What about the issue of the state using the first call for character evidence and that's improper? Your Honor, I agree. I listened to the first call several times. I think that it's frankly minimally relevant. It does sound like premature character evidence because it was admitted before defendant testified. There's some vague references in there to this person, Raven, confronting someone. It's not clear that it's a reference to Ms. Moore. I think that frankly what happened is we listened to this below and we thought that there was a stronger reference than there actually was. But I think that what we get to there is whether or not if the people didn't properly admit it, there was only prejudice to the defendant. And I think that even applying the harmless error standard, we don't find any. Defendant characterizes this as a he-said-she-said domestic battery case, but the defendant's credibility in addition to being attacked by his properly admitted calls directly to the victim, Ms. Moore, showing that he had this campaign to manipulate her, agreeing on page 98 that he was trying to get her not to come and testify. We also had the order of protection itself and the previous convictions that were admissible under Montgomery, including the other incident that involved Ms. Moore herself. So there were several indications in this record that we were able to attack defendant's testimony in that regard. And so I think that even if we excluded the first call, which in hindsight may have been proper to do, that the result would have been the same. The judge certainly would have found based on all the other evidence, which was properly admitted and considered that Ms. Moore was credible and the defendant was not. Any other questions? Yes, I'm sorry. Just one other issue that came up in defense argument is that we don't know how much time the defense had to view these voluminous calls. And one thing that I think defendant ignores is that because it was his demand, he simply could have withdrawn the demand and asked for a continuance if there was anything of these calls that he thought would have been prejudicial and defendant chose not to do that. So I think there any suggestion there that there was any unfairness of defendant could have been resolved at that juncture. And if there are no further questions for these reasons, and those stated in our brief, the people of the state of Illinois respectfully ask for support to affirm defendant's convictions for domestic battery. Thank you. Thank you very much. Rebuttal? I think you're I think you're muted. Yes, your honor. Thank you. I apologize. I want to address first the reference to the mother. This is page 117 and 118 where the state references, you know, there were some calls to his mother to remind the court what we were talking about. And and then  This is the case where he was talking. I believe it was through his friend. I don't know. Through his friend and to his mother and then he gets into the substance of what his mother was talking about how he was going to manipulate the victim and make it seem like they're going to get back together and encourage him not to testify. So the reference of the mother, you know, it came up in cross-examination. You made some phone calls from jail. You're going to call your mother, but here the court or the state we have referencing the substance of the call that came up and I think the I appreciate the state's concession on the first call as character reference as character evidence. I think what's critical. There is the use of this term finesse, which I think I believe the court uses later for the state also when it's a closing argument says yes, but the finessing there is not it's not a manipulation of more not to show up to trial. It's to get some money so we can raise a lawyer. In fact on the unpublished phone calls in I reference it in the appendix. There was a call from Mr. Shepherd to an attorney and it's in evidence and he's trying to ask how much money to hire you for my case. The calls were supposed to be consciousness of guilt and what we have in that call and in other calls in which he's trying to get money. It's simply Mr. Shepherd trying to exercise his right to choose counsel. And then and I guess finally the again that the time between the beginning of trial and and my clients ability to review the phone calls urgency. There is not we don't is the issue as raised is not we don't know what is on the discs. It's that we don't know what the court might be reviewing from these admitted phone calls in order to be able to present a coherent defense against whatever it is. The fact that an additional phone call comes up in the cross-examination is Terry on top for the state, but what's what's most important I think in the argument is that two discs fully admitted over a relevant objection or disagrees with and then the state now wants us to presume the corpus didn't didn't consider those calls and I don't think that is a proper practice and that's not how law should be practiced. And with that if there are no questions, we'd ask that you reverse and remand this case. Thank you very much. Thank both of you for your well-done briefs and your well-done arguments take the case under advisement and have a good afternoon. Thank you very much.